215 So.2d 378 (1968)
Mrs. Elizabeth Lucille Fuller HUMBLE et al., Plaintiffs-Appellees,
v.
T. J. DEWEY, Sr., Defendant-Appellant.
No. 2469.
Court of Appeal of Louisiana, Third Circuit.
October 31, 1968.
*379 Kay & Kay, by Herman I. Stewart, Jr., DeRidder, for defendant-appellant.
Mitchel M. Evans, DeRidder, for plaintiffs-appellees.
Before TATE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a petitory action instituted by Mrs. Elizabeth Fuller Humble and Mrs. Catherine Fuller Stark against T. J. Dewey, Sr. Plaintiffs demand judgment decreeing them to be the owners of a six-acre tract of land in Beauregard Parish. Defendant answered claiming title by acquisitive prescription of thirty years to the western portion of that tract, comprising about four and one-half acres. Judgment was rendered by the trial court in favor of plaintiffs, declaring them to be owners of the subject property and directing defendant to remove fences from it. Defendant has appealed.
Plaintiffs have record title to the entire six-acre tract of land. The sole issue presented on this appeal is whether defendant's *380 possession has been sufficient to give him a 30-year prescription title to the western portion of that tract.
J. W. Duckworth purchased the subject property from J. D. Bailey in 1927. He moved into a residence building located on the property and began occupying it as his home about that time. The residence building in which Duckworth lived was destroyed by fire in 1931, and no one has lived on the property since that time. Duckworth sold the entire six-acre tract to A. A. Fuller in 1939. Fuller died in 1950, leaving as his sole survivors his widow and the plaintiffs in this suit, the latter being his only children. Plaintiffs later acquired the interest of the surviving widow, and according to the public records they now are the sole owners of the property.
For the past 40 years defendant Dewey has lived with his family on a two-acre tract of land which is located immediately north of and adjacent to the property which is in dispute here. A public road separates the defendant's home place from the subject six-acre tract of land.
During the spring of the year 1932, or about one year after the Duckworth residence had been destroyed by fire, defendant planted and raised a crop of corn and beans on the six-acre tract. The property was under fence at that time. Defendant testified, however, that in 1932 he was "ordered" by the nephew of a former owner to take down the existing fence, that pursuant to that order he removed the wire from that fence, and that immediately thereafter he constructed another fence on the same posts around the entire six-acre tract of land. He raised corn and cotton on the property until 1938, and for several years thereafter he raised garden crops on a small portion of the tract and he used the rest of it for pasturage purposes. Later he stated that he fenced off the eastern part of the land because it was "poor," and since that time he has used only the western part of it for crops and pasturage purposes. The portion which he has continued to use comprises about four and one-half acres.
Defendant concedes that he has never acquired title to the disputed tract of land. He testified that there was a financial "panic" in 1931 and 1932, that he was having difficulty in providing food for his family, and that after the subject property became vacant in 1931, he began raising crops on it. He stated, "I just went over there and went to plowing and nobody didn't come tell me to get off, and I didn't ask nobody."
Dewey testified that he did not know who owned the property when he began farming it, that he thought it was owned by Jeff Bailey, and that he did not know that Bailey had sold it to Duckworth in 1927 or that Duckworth had sold it to Fuller in 1939. He stated, "I couldn't say who it belonged to, hadn't nobody come around there and told me to get off." Defendant also testified that Duckworth owed an account to him at defendant's grocery store about the time the house burned down, and that Duckworth had told him, "Son, if I had any dealings with that property or anything about it you can have my part for what I owe you." He acknowledged, however, that he knew that such a statement by Duckworth did not given him legal title to the land and that he did not own the property when he began using it.
Defendant has never paid any taxes on the property, all taxes which were levied against the property since 1932 having been paid by the record title owners.
In 1959, a neighbor named Hardee Myers contacted the husband of one of the plaintiffs, and through him Myers obtained verbal permission from the plaintiffs to use the eastern portion of the six-acre tract for pasturage purposes. He explained that the reason why he contacted plaintiffs and obtained their permission to use the land was because he thought they were the owners of the property. He did not ask Dewey for permission. Immediately after *381 obtaining this permission, Myers informed defendant Dewey of the agreement, and Dewey replied, "O.K., just fix a good fence." Myers thereupon constructed a fence around the east one and one-half acres of the original tract, and he has been using it since 1959.
In 1962, plaintiffs had an opportunity to sell the property. They authorized the prospective purchaser to look over the land, but Dewey refused to let him go on the premises. Plaintiffs contend that that was the first indication they had that Dewey was claiming ownership of the property. The husband of one of the plaintiffs thereupon contacted defendant personally and demanded that he either lease the property from plaintiffs or vacate it. Defendant refused to comply with either of these demands, stating that he "was going to try to hold that land." Plaintiffs also demanded that defendant remove the fences which he had placed on the property, and they gave him two weeks within which to do so. Defendant did not comply with that demand.
About two months after the first oral request had been made to lease or vacate the property, plaintiffs contacted the City Marshal of Merryville, who prepared for them a letter addressed to defendant formally requesting that he remove the fences which he had constructed on the property so plaintiffs could complete the sale of it. This letter was signed by plaintiffs and was sent to defendant.
Mrs. Stark, one of the plaintiffs, testified that her father, A. A. Fuller, and Dewey had been "good friends" during her father's lifetime, and that Dewey's daughter had been the other plaintiff's (Mrs. Humble's) best friend. She stated that she and her sister had assumed that their father had "let Mr. Dewey use the land," and that nothing had occurred which caused them to question Dewey's motives until 1962, when he refused to allow a prospective purchaser to go on the land. Immediately after this occurred, of course, they made a demand on defendant that he remove the fences and that he lease the property from them or vacate it.
The trial judge concluded that defendant had failed to establish that he had possessed the subject property for thirty years "under the title of owner." He stated in his reasons for judgment that, "it did not appear that the people in and around Merryville knew the defendant claimed to be the owner," and that the defendant's intent to claim as owner "first became known less than eight years ago and after the death of A. A. Fuller." Judgment was rendered, therefore, rejecting defendant's demand that he be decreed to be the owner of a part of that property by prescription of thirty years.
The ownership of immovables may be acquired by the acquisitive prescription of thirty years without any need of title or possession in good faith. LSA-C.C. art. 3499. The possession on which this prescription is founded must be continuous and uninterrupted during all the time, and it must be public and unequivocal, and under the title of owner. LSA-C.C. art. 3500.
LSA-C.C. art. 3436 provides that: "To be able to acquire possession of property, two distinct things are requisite: (1) The intention of possessing as owner. (2) The corporeal possession of the thing."
In order for a possessor to successfully claim the ownership of immovable property under a plea of thirty years acquisitive prescription, he must establish not only that there has been corporeal possession of the property for the required period of time, but also that there was a positive intention to take and commence possession of the property as owner. LSA-C.C. arts. 3436, 3499, 3500, 3503; Stille v. Schull, 41 La.Ann. 816, 6 So. 634 (1889); Clemens v. Meyer, 44 La.Ann. 390, 10 So. 797 (1892); Buckley v. Dumond, 156 So. 784 (La.App. 1st Cir. 1934); Harry Bourg Corporation v. Parfait, 199 So.2d 405 (La. App. 1st Cir. 1967); 18 L.L.R. 52, 53; 13 L.L.R. 582, 584; 23 L.L.R. 318, 319; Matthews *382 v. Carter, 138 So.2d 205 (La.App.2d Cir. 1962); City of New Orleans v. Shakspeare, 39 La.Ann. 1033, 3 So. 346 (1887); Sanders De Hart v. Continental Land & Fur Co., 205 La. 569, 17 So.2d 827 (1944); Succ. of Seals, 243 La. 1056, 150 So.2d 13 (1963); Phillips v. West, 144 So.2d 173 (La.App. 1st Cir. 1962); Esso Standard Oil Co. v. Catsulis, 136 So.2d 431 (La.App. 1st Cir. 1961).
In Phillips v. West, supra, for instance, our brothers of the First Circuit Court of Appeal said:
"* * * To obtain title to land by the prescription of 30 years the intention of possessing as owner as well as the possession of the land must be established. Liles v. Pitts, 145 La. 650, 82 So. 735."
And in Harry Bourg Corporation v. Parfait, supra, the same court held that:
"In order to be successful with a plea of thirty years acquisitive prescription, the intention of possessing as owner must be proved, Clemens v. Meyer, 44 La.Ann. 390, 10 So. 797 (1892), and there must be a positive intention to take and commence possession as owner, Buckley v. Dumond, 156 So. 784 (La. App. 1st Cir., 1934)."
In some cases, we think the intention to possess as owner may be inferred from the surrounding facts and circumstances. We believe, however, that ordinarily the intent to possess as owner should not be inferred unless the actions of the possessor or the surrounding facts and circumstances are sufficient to reasonably apprise the public, and the record title owner of the property, of the fact that the possessor has the positive intent to possess as owner.
The burden of proof to establish the facts essential to support a plea of thirty years acquisitive prescription rests on the party who makes the plea. Chapman v. Morris Building & Land Improvement Ass'n, 108 La. 283, 32 So. 371 (1902); Matthews v. Carter, supra; Motty v. Broussard, 201 So.2d 293 (La.App. 3d Cir. 1967).
We agree with the trial judge that the evidence in the instant suit fails to establish that defendant Dewey intended to possess the subject property as owner when he commenced his possession in 1932. The evidence shows, we think, that he began cultivating and using the property without any intention of possessing it as owner. When he first began to use the property he intended merely to raise some small crops on it until the owner instructed him to discontinue doing so. He occupied the land, therefore, merely by the suffrage of the landowner. It is clear that at some later date he had a change of heart, and did decide to possess it as owner. The trial judge concluded that this intention to possess as owner occurred less than eight years ago. Our conclusion is that the evidence fails to show that the defendant had the positive intent to possess as owner for the required period of thirty years, and that he thus has failed to establish ownership by acquisitive prescription.
Defendant argues, however, that the fact that he went into possession of the property creates a presumption that he possessed as master and owner. He relies on LSA-C.C. art. 3488 which provides:
"As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another."
The above quoted article relates specifically to prescription of ten years, but in view of the provisions of LSA-C.C. art. 3505 we think it also must be applied to prescription of thirty years. See Theriot v. Bollinger, 172 La. 397, 134 So. 372 (1931).
We agree with defendant that the fact that he went into possession of the subject property created a presumption *383 that he possessed it as owner. This presumption is subject to rebuttal, however, and we think the defendant's own testimony, considered with the surrounding facts and circumstances, rebuts and overcomes that presumption.
Defendant has failed to establish that he has acquired a thirty year prescriptive title to the property, and we thus find no error in the judgment which was rendered by the trial court.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.